1   **REESE RICHMAN LLP**
    Michael R. Reese (State Bar No. 206773)
2   Kim E. Richman (*pro hac vice* to be sought)
    875 Avenue of the Americas, 18th Floor
3   New York, New York 10001
    Telephone:    (212) 643-0500
4   Facsimile:    (212) 253-4272
    Email:        mreese@reeserichman.com
5                 krichman@reeserichman.com

6

7   **THE GOLAN FIRM**
    Yvette Golan
8   1919 Decatur St.
    Houston, Texas 77007
9   Telephone:    (866) 298-4150, ext. 101
    Facsimile:    (928) 441-8250
10  Email:        ygolan@tgfirm.com

11  *Counsel for Plaintiff and the Proposed Class*

12

13              **UNITED STATES DISTRICT COURT**

14              **NORTHERN DISTRICT OF CALIFORNIA**

15                   **OAKLAND DIVISION**

16

17  | SEAN BOHAC, on behalf of himself and all | Case No. _____ |
18  | others similarly situated, | |
    | | **COMPLAINT** |
19  | Plaintiff, | |
    | | **CLASS ACTION** |
20  | v. | |
    | | **DEMAND FOR JURY TRIAL** |
21  | GENERAL MILLS, INC., | |
22  | | |
    | Defendant. | |
23

24

25

26

27

28

1  Plaintiff Sean Bohac ("Plaintiff"), on behalf of himself and all others similarly situated, and
2  by and through his undersigned counsel, alleges the following based upon his own personal
3  knowledge and the investigation of his counsel. Plaintiff believes that substantial evidentiary
4  support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

5  **NATURE OF THE ACTION**

6  1.  This is a proposed class action against General Mills, Inc. ("General Mills" or
7  "Defendant") for misleading consumers about the nature of the ingredients of its products sold under
8  the Nature Valley brand name that included the representation "100% NATURAL" and other similar
9  representations in the product labeling, packaging, marketing, advertising, and promotional materials
10 ("Nature Valley," "Product," or "Products"), including, by way of example and without limitation:

11  - Nature Valley Crunchy Granola Bars: Oats n' Honey; Peanut Butter;
       Roasted Almond; Apple Crisp; Cinnamon; Maple Brown Sugar; Pecan
12     Crunch; Oats n' Dark Chocolate; and Dark Chocolate Peanut Butter;
    - Sweet & Salty Nut Granola Bars: Almond; Peanut; Cashew; Roasted
13     Mixed Nut; Dark Chocolate; and Peanut & Almond;
    - Protein Chewy Bars: Peanut Butter Dark Chocolate and Peanut, Almond
14     & Dark Chocolate;
    - Granola Thins Crispy Squares: Dark Chocolate; Peanut Butter; and Dark
15     Chocolate Peanut Butter;
16  - Trail Mix Chewy Granola Bars: Fruit & Nut; Cranberry & Pomegranate;
       and Dark Chocolate & Nut;
17  - Roasted Nut Crunch Granola Bars: Almond Crunch and Peanut Crunch;
       and
18  - Yogurt Chewy Granola Bars: Vanilla and Strawberry.

19

20  2.  Defendant has discontinued offering some Products and regularly introduces new
21 products that are also falsely labeled as "100% NATURAL" or "all natural." The identity of these
22 additional products will be ascertained through discovery and are included in the list of Products.

23  3.  During a period of time from October 12, 2006, to the present, Defendant engaged in
24 a widespread marketing campaign to mislead consumers about the nature of the ingredients in its
25 Nature Valley Products. Specifically, Defendant conveyed to consumers that the Products are
26 "100% NATURAL," even though Defendant knew that such statements were false and misleading.
27 Additionally, the name "Nature Valley," representations such as "Natural Energy Bar," the
28 representation that the Products are "granola bars," and the green coloring and "pastoral" images on

1 the packaging all convey qualities of healthfulness and naturalness that Defendant knew were false
2 and misleading in light of the fact that the Products contain unnatural ingredients.

3      4.      By deceiving consumers about the nature, quality, and/or ingredients of the Products
4 as detailed herein, thereby distinguishing them from similar products, such as store-brand granola
5 bars, Defendant was able to command a premium price for the Products. Defendant was motivated
6 to mislead consumers for no other reason than to take away market share from competing products,
7 thereby increasing its own sales and profits.

8      5.      Defendant conveyed its misrepresentations about the Products through a widespread
9 marketing and advertising campaign on the Product packaging, on various websites, including
10 http://www.naturevalley.com, and in Product advertisements and promotional materials.

11     6.      For example, Defendant prominently places the representation "100% NATURAL"
12 on the front of its Products. *See, e.g.*, Exhibit 1. Defendant also places the "100% NATURAL" or
13 "all natural" representations on the back, top, and/or bottom of the Product boxes and/or on the
14 wrappers that contain each individual granola bar. *See, e.g.*, Exhibit 2.

15     7.      Further, Defendant makes representations on the back of the boxes such as the
16 following: "Since 1975, Nature Valley has been making great tasting crunchy granola bars with
17 100% natural ingredients like whole grain oats & honey." *See* Exhibit 2.

18     8.      The representation that the Products are "100% natural" is central to the marketing of
19 the Products and is displayed prominently on their packaging. The misrepresentations were uniform
20 and were communicated to Plaintiff and every other member of the Class at every point of purchase
21 and consumption.

22     9.      Unfortunately for consumers, the Products are not "100% natural." For one, the
23 Products are derived from unnatural, genetically modified plants (a/k/a genetically modified
24 organisms or "GMOs"). Recent GMO testing of Nature Valley 100% NATURAL Crunchy Oats 'n
25 Honey Granola Bars by an independent lab demonstrates that the product contained GMOs,
26 including viral and bacterial genes. *See* Exhibit 3 (lab results indicating that a sample of the Product
27 was found to contain the 35S and NOS markers, which are derived, respectively, from the
28 cauliflower mosaic virus and from *Agrobacterium tumefaciens* bacteria).

10.  The term "natural" has been defined, at least partially, by federal agencies. The Food and Drug Administration ("FDA") has defined the outer boundaries of the use of the term "natural" by stating that a product is not natural if it contains synthetic or artificial ingredients.[1]  Similarly, the USDA's Food Safety and Inspection Service ("FSIS") defines a "natural" product as a product that does not contain any artificial or synthetic ingredients and does not contain any ingredient that is more than "minimally processed."[2]

11.  According to USDA federal regulations, an ingredient is synthetic if it is:

> [a] substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes.[3]

12.  "Unnatural" is a defining characteristic of GMO foods.  For example, the Monsanto Company, an agricultural company that pioneered GMO seeds, defines GMOs as "[p]lants or animals that have had their **genetic makeup altered to exhibit traits that are not naturally theirs**. In general, genes are taken (copied) from one organism that shows a desired trait and transferred into the genetic code of another organism."[4]

13.  Furthermore, as described in greater detail herein, Defendant adds a substantial amount of unnaturally processed and synthetic ingredients to its so-called "natural" Products. *See* Exhibit 4.

14.  These synthetic and excessively processed ingredients are not mere trace ingredients in the Products.  For example, in the Sweet & Salty Nut/Roasted Mixed Nut granola bar, there is more high maltose corn syrup than cashews, more high maltose corn syrup than almonds, and more

---

[1] *See* FDA, *Food Label Helps Consumers Make Healthier Choices*, www.fda.gov/downloads/ForConsumers/ConsumerUpdates/UCM199361.pdf 2.

[2] *See, e.g.*, USDA, FSIS, *Fact Sheets*, *Food Labeling*, *Meat and Poultry Labeling Terms*, http://www.fsis.usda.gov/FACTSheets/Meat_&_Poultry_Labeling_Terms/index.asp#14 ("natural").

[3] 7 C.F.R. § 205.2.

[4] *See* http://www.monsanto.com/newsviews/Pages/glossary.aspx#g (emphasis added).

high maltose corn syrup than oats. In the Chewy Trail Mix/Fruit & Nut granola bar, there is more high maltose corn syrup than any fruit ingredient and more high maltose corn syrup than any nut ingredient. There is more maltodextrin than any pomegranate ingredient in the Chewy Trail Mix/Cranberry & Pomegranate granola bar. In the Strawberry Yogurt Chewy granola bars, there is more calcium carbonate than any ingredient even derived from strawberries.

15. Because the Products contains GMOs and other unnatural ingredients, Defendant's claims that the Products are "100% NATURAL" and other representations of the healthfulness and naturalness of the Products are false, misleading, and designed to deceive consumers into purchasing the Products. Plaintiff brings this action to stop Defendant's misleading practice.

## JURISDICTION AND VENUE

16. This Court has personal jurisdiction over the parties in this case. Plaintiff is a citizen of California and, by filing this complaint, consents to this Court having personal jurisdiction over him. Defendant's counsel has informed Plaintiff's counsel that Defendant also consents to personal jurisdiction of this Court. Additionally, Defendant purposefully avails itself of the California consumer market and provides the Products for sale to at least hundreds of locations within this District and thousands of retail locations throughout California, where the Products are purchased by thousands of consumers every day.

17. This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

18. Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading

1  information regarding the nature, quality, and/or ingredients of the Products, occurred within this
2  District. Additionally, Defendant has agreed not to contest venue.

3  **Intradistrict Assignment**

4  19.  Assignment to the Oakland Division is appropriate under Civil L.R. 3-2(c) and (d)
5  because a substantial part of the events or omissions that give rise to the claim – including the
6  dissemination of false and misleading information regarding the nature, quality, and/or ingredients of
7  the Products – occurred within the Counties of Alameda, Contra Costa, Del Norte, Humboldt, Lake,
8  Marin, Mendocino, Napa, San Francisco, San Mateo, and Sonoma.

9  **PARTIES**

10  20.  Plaintiff Sean Bohac resides in San Diego, California, and has no intention of
11  changing his residence. Plaintiff Bohac purchased several varieties of the Products over the last
12  three or four years at retail prices. For example, he purchased the "Oats 'n Honey" variety and the
13  peanut butter crunchy granola bar varieties, both as single bars and in boxes of multiple bars, from
14  various San Diego supermarkets. In doing so, he relied upon the representation that Nature Valley
15  was "100% NATURAL" in deciding to purchase the Products. Additionally, he relied upon the
16  name "Nature Valley," representations such as "Natural Energy Bar," the representation that the
17  Products are "granola bars," and the green coloring and "pastoral" images on the packaging, all of
18  which convey qualities of healthfulness and naturalness to a reasonable consumer. Had Plaintiff
19  Bohac known at the time that the Products were not, in fact, "natural" but, instead, made with GMOs
20  and other unnatural ingredients, he would not have purchased the Products or paid a premium for the
21  Products.

22  21.  Defendant General Mills, Inc. is a Delaware corporation with its principal place of
23  business in Minneapolis, Minnesota. It owns and retails the Nature Valley brand and markets,
24  distributes, and sells the Products throughout California and nationwide.

25  //
26  //
27  //
28

CLASS ACTION COMPLAINT
- 5 -

1

## SUBSTANTIVE ALLEGATIONS

2 **Reasonable consumers have reasonable concerns about GMOs, which have been found in**
3 **the Nature Valley Products.**

4      22.     GMOs have created controversy around the world due to concerns about food safety,
5 the effect on natural ecosystems, gene flow (a/k/a "gene migration" or "genetic drift") into non-
6 GMO crops, and other issues.

7      23.     A recent study published in the journal *Food and Chemical Toxicology* found that
8 genetically modified corn causes rats to develop tumors and die more readily than control subjects
9 not fed the GMO corn.[5]

10      24.     One consumer response to such concerns has been to purchase products represented
11 as "natural" rather than food products that are derived from GMOs.

12      25.     A product that is derived from GMOs is unnatural by definition.[6]

13      26.     Independent testing has determined that the GMO ingredients in Nature Valley
14 contain genes from a virus (cauliflower mosaic virus, or CaMV) and from bacteria (*Agrobacterium*
15 *tumefaciens*).

16      27.     Natural breeding can occur only between closely related life forms – *e.g.*, wheat with
17 wheat. Natural breeding techniques cannot add the genes of a different organism – *e.g.*, adding fish
18 genes to a wheat seed. Instead, to add genes of an organism to a different organism, scientists must
19 use genetic engineering, producing an organism that could not otherwise exist in nature. Thus,
20 natural oats, corn, soy, and other plants could not include the genes of a virus or of bacteria, unless
21 the plant DNA was altered through genetic modification.

22

23

24 _____

  [5] http://research.sustainablefoodtrust.org/wp-content/uploads/2012/09/Final-Paper.pdf.

25   [6] *See* http://www.monsanto.com/newsviews/Pages/glossary.aspx#g (defining GMOs as plants or
26 animals that have had their genetic makeup altered to exhibit traits that are not naturally theirs);
http://www.who.int/foodsafety/publications/biotech/20questions/en (defining GMOs as "organisms
27 in which the genetic material (DNA) has been altered in a way that does not occur naturally.").

28

28. The viral and bacterial genes were added to the ingredients in the Products so that other foreign genes would be "activated." The identity and source of these other genes is unknown but may come from bacteria, viruses, insects, or animals. In the past, for example, corn has been engineered with mouse genes, jellyfish genes, hepatitis virus genes, rabies virus genes, chicken genes, and even human genes.[7]

29. Moreover, genetically modified plants are fundamentally different from naturally existing plants because inserting foreign genes into plant DNA alters the original genes, just as inserting a new letter can alter the meaning of a word. Foreign genes reduce or increase the natural plant gene's function, sometimes blocking its expression altogether. These unexpected consequences can yield alterations in the nutritional content of the food, toxic and allergenic effects, poor crop performance, and generations of environmental damage.

30. These artificial, manmade plants are also "synthetic" under federal definition, as they were "formulated or manufactured by a chemical process or by a process that chemically changes a substance."[8]

31. In accordance with expert definitions and common sense, reasonable consumers understand that such genetically modified ingredients are *not* natural.

32. Indeed, surveys show that a majority of consumers believe the term "natural" implies the absence of genetically modified ingredients.[9] Additionally, for a majority of consumers, a "natural" label is either "important" or "very important."[10]

---

[7] *See, e.g.*, USDA APHIS Permit Nos. 98-117-01r (corn genetically engineered to express human hemoglobin protein chains); 98-117-02r (human procollagen type chain protein); 98-117-03r (human serum albumin protein); 98-117-04r (rabies virus G glycoprotein); Nat. Biotech. 18: 670-674 (chicken gene).

[8] 7 C.F.R. § 205.2.

[9] *See* Canada Organic Trade Association, *Consumer Confusion About the Difference: "Natural" and "Organic" Product Claims* (2010), at 6, *available at* http://www.ocpro.ca/docs/Library/White%20Paper%20Nat-Org%20COTA.pdf (citing The Hartman Group, *Beyond Organic and Natural* (2010), *available at* http://www.hartman-group.com/publications/reports/beyond-organic-and-natural).

1 | **In addition to GMOs, the Nature Valley Products contain several other unnatural ingredients.**

2 |     33.    The Products also contain a variety of other heavily processed, unnatural ingredients,
3 | including sodium bicarbonate, soy lecithin, soy protein isolate, corn syrup, high fructose corn syrup,
4 | high maltose corn syrup, maltodextrin, dextrose monohydrate, tocopherols, calcium carbonate, and
5 | glycerin. As detailed below, although a reasonable consumer might interpret the names of some of
6 | the ingredients as "natural," the ingredients are, in fact, synthetic and unnatural.

7 |     34.    ***Sodium bicarbonate*** (a/k/a "baking soda") is manufactured from sodium carbonate
8 | and carbon dioxide, a synthetic compound, usually via the "Solvay process," which uses sodium
9 | chloride and calcium carbonate as raw materials. Calcium carbonate is heated until it decomposes,
10 | producing calcium oxide and carbon dioxide. A sodium chloride solution is saturated with ammonia
11 | and fed directly into carbonation columns. Carbon dioxide from the lime kilns is purified and then
12 | passed into the ammoniated sodium chloride solution, producing a precipitate of crude sodium
13 | bicarbonate. This crude product is then purified in a second crystallization step to obtain the
14 | commercial sodium bicarbonate.

15 |     35.    Soy ingredients such as ***soy lecithin*** and ***soy protein isolate*** are used to increase
16 | protein content without increasing the carbohydrate and fat content, creating a protein, fat, and
17 | carbohydrate ratio unlike that of a natural and non-processed protein source. These soy products are
18 | all heavily processed to remove the natural "bean" flavor so that the finished "soy" product no
19 | longer tastes like soy. Soy protein products are further refined through unnatural processes, using
20 | chemical additives, acid washes, and alkaline solutions. The residue of hexane-extracted soybeans is
21 | chemically cleaned and processed to make soy flour or soy grits. Soy lecithin is processed and
22 | isolated as a gum after the re-hydration of hexane-extracted soybeans.

23 |     36.    Soy protein isolate is so heavily processed that a Technical Advisory Panel
24 | addressing the requirements of the Organic Foods Production Act of 1990 concluded that it is a
25 |
26 | _____

27 | [10] *See* Context Marketing, *Beyond Organic: How Evolving Consumer Concerns Influence Food*
28 | *Purchases* (2009), *available at* http://www.contextmarketing.com/foodissuesreport.pdf.

1 synthetic substance. The spray drying process forms nitrites, which form potent carcinogens. The
2 alkaline processing forms lysinoalanine, a toxin.[11]

3    37.    To produce **corn syrup**, corn is first wet milled to produce corn starch. To leach the
4 starch from the kernel, the shelled corn is soaked for 30-48 hours in a dilute sulfur dioxide solution,
5 a synthetic substance. This produces corn steep liquor, one of 2800 High Production Volume
6 chemicals identified in the U.S. Environmental Protection Agency's 1990 Toxic Substances Control
7 Act Inventory Update Rule. Once the starch is leached, it is then further processed to produce corn
8 syrup.

9    38.    While the precise manufacturing process used in Nature Valley's Products is not yet
10 known, corn syrup can be produced by combining the corn starch with dilute hydrochloric acid or
11 weak sulfuric acid (both hazardous substances) or by using starch-splitting enzymes. Alpha-amylase
12 (an enzyme secreted by the bacteria Bacillus) breaks the starch into oligosaccharides, which in turn
13 are further broken down into glucose by adding glucoamylase (an enzyme secreted by the fungus
14 Aspergillus). The resulting corn syrup is almost entirely comprised of glucose.

15    39.    Not yet having the manufacturer's desired sweetness, corn syrup is often further
16 enzymatically processed to convert some of its glucose into fructose by xylose isomerase (a/k/a
17 glucose isomerase) to produce **high fructose corn syrup** (a/k/a "HFCS"). The glucose isomerase
18 used to develop HFCS is derived from various microorganisms, including Streptomyces rubiginosus,
19 Actinoplanes missouriensis, Streptomyces olivaceus, Streptomyces olivochromogenes, and Bacillus
20 coagulans.

21    40.    To produce **high maltose corn syrup** (a/k/a "HMCS"), the corn syrup production
22 process is altered to limit dextrose and then enzymatically treated (often with with alpha-amylase or
23 beta-amylase) to convert some of the glucose into maltose.

24    41.    Similarly, **maltodextrin** is a saccharide polymer that is produced through partial acid
25 and enzymatic hydrolysis of corn starch. The acid hydrolysis process is specifically deemed to be a
26 "[r]elatively severe process" that renders an ingredient no longer "natural."

27
28 [11] *See* Database of Select Committee on GRAS Substances (SCOGS) Reviews, Soy Protein Isolate.

1    42.   **Dextrose monohydrate** (a/k/a "dextrose") is enzymatically synthesized in a similar
2  manner, crystallizing D-glucose with one molecule of water.

3    43.   Synthetic chemicals are often used to extract and purify the enzymes used to produce
4  corn syrup, high fructose corn syrup, high maltose corn syrup, maltodextrin, and dextrose
5  monohydrate. The microorganisms, fungi, and bacteria used to produce these enzymes are also often
6  genetically modified.

7    44.   **Tocopherols** are chemical preservatives listed by federal regulations as synthetic
8  substances.   They are produced by molecular distillation, solvent extraction, or absorption
9  chromatography.

10    45.   To be added as a food ingredient, **calcium carbonate** must be produced from calcium
11 hydroxide, calcium chloride, or as a byproduct in the lime soda process. Federal regulations
12 recognize calcium hydroxide as a synthetic compound, and the FDA has declared that calcium
13 chloride renders a food no longer "natural."[12]   The lime soda process employs hazardous and
14 synthetic substances and requires processing techniques so excessive so as to render the finished
15 product unnatural.  In fact, the EPA has promulgated regulations specifically addressing the
16 environmental impact of calcium carbonate produced through the lime process and by recovery from
17 Solvay waste products. Additionally, when used in drugs, calcium carbonate is listed as a synthetic
18 compound by federal regulation.

19    46.   **Glycerin** is also listed by federal regulations as a synthetic substance. It is produced
20 through various extensive means using synthetic and/or hazardous substances, including
21 epichlorohydrin (hazardous), sodium hydroxide (synthetic and hazardous), allyl alcohol (synthetic
22 and hazardous), hydrogen peroxide (synthetic), and peracetic acid (synthetic).

23    47.   Discovery is necessary to uncover the true nature of other ingredients in Defendant's
24 Products. For example, Defendant lists unspecified "**color added**" as an ingredient in some of its
25 Nature Valley products. Stating its policy, the FDA explains, "[s]ince all added colors result in an

26  _____

27 [12] *See* FDA Warning letter to Karl A. Hirzel, Hirzel Canning Co., (Aug. 29, 2001).

28

1  artificially colored food, we would object to the declaration of any added color as 'food' or
2  'natural.'"[13]

3      48.    Defendant also adds unspecified "*cultures*" to some of its Products, concealing the
4  identity, source, and nature of these ingredients and failing to identify the substrate, which violates
5  federal regulation.[14]

6      49.    Defendant also injects "*natural flavor*" in some of Products, concealing from
7  consumers the identity, source, or nature of these ingredients. While "natural flavors" must be
8  *derived* from a "spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud,
9  root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation
10  products thereof," it remains unknown whether the processing used to derive the "flavor" from the
11  natural source renders the final ingredient so heavily processed that it can no longer be considered to
12  be a "natural" ingredient. Further discover is, therefore, necessary with regard to that issue.

13  **Despite all these unnatural ingredients, Defendant markets its Products as "natural."**

14      50.    Despite knowing that GMOs are not natural and that its Products contain GMOs and
15  other unnatural, highly processed substances, Defendant has engaged in a widespread marketing and
16  advertising campaign to portray the Products as being "natural."

17      51.    Defendant engaged in this misleading and deceptive campaign to charge a premium
18  for the Products and take away market share from other similar products.

19      52.    Defendant sells the Products to consumers nationwide. Defendant places the
20  representation "100% NATURAL" on the front of multi-bar boxes of the granola bar Products, as
21  well as on the back, top, and bottom of the granola bar Product boxes and on the wrappers that
22  contain each individual granola bar.

23
24
25  _____

26  [13] FDA Compliance Policy Guide Sec. 587.100.

27  [14] 21 C.F.R. 101.4(b)(5).

28

1    53.    Further, Defendant makes representation on the back of the boxes such as the
2  following: "Since 1975, Nature Valley has been making great tasting crunchy granola bars with
3  100% natural ingredients like whole grain oats & honey."

4    54.    Other prominent representations that Defendant makes on the packaging of its
5  Products are the name "Nature Valley," representations such as "Natural Energy Bar," the
6  representation that the Products are "granola bars," and the green coloring and "pastoral" images on
7  the packaging all convey qualities of healthfulness and naturalness.

8    55.    As stated herein, such representations and the widespread marketing campaign
9  portraying the Products as being "natural" are misleading and deceptive to consumers because the
10  Products are made with unnatural ingredients, while Defendant's marketing and other materials do
11  not disclose this fact, which has been verified by independent testing and careful review of the
12  ingredients in the Products.

13    56.    Consumers frequently rely on food label representations and information in making
14  purchase decisions. Here, Plaintiff and the other Class members reasonably relied to their detriment
15  on Defendant's misleading representations and omissions. Defendant's misleading affirmative
16  statements about the "naturalness" of its Products obscured the material facts that Defendant failed
17  to disclose about the unnaturalness of its Products.

18    57.    Plaintiff and the other Class members were among the intended recipients of
19  Defendant's deceptive representations and omissions. Defendant made the deceptive representations
20  and omissions on the Products with the intent to induce Plaintiff's and the other Class members'
21  purchase of the Products. Defendant's deceptive representations and omissions are material in that a
22  reasonable person would attach importance to such information and would be induced to act upon
23  such information in making purchase decisions. Thus, Plaintiff's and the other Class members'
24  reliance upon Defendant's misleading and deceptive representations and omissions may be
25  presumed.

26    58.    The materiality of those representations and omissions also establishes causation
27  between Defendant's conduct and the injuries sustained by Plaintiff and the Class.

28

59. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the other Class members.

60. In making the false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would pay a premium for "natural" products over comparable products that are not "natural," furthering Defendants' private interest of increasing sales for its Products and decreasing the sales of products that are truthfully offered as "natural" by Defendant's competitors.

61. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiffs and the other Class members in that they:

    a. paid a sum of money for Products that were not as represented;
    b. paid a premium price for Products that were not as represented;
    c. were deprived the benefit of the bargain because the Products they purchased were different than what Defendant warranted;
    d. were deprived the benefit of the bargain because the Products they purchased had less value than what was represented by Defendant;
    e. did not receive Products that measured up to their expectations as created by Defendant;
    f. ingested a substance that was other than what was represented by Defendants;
    g. ingested a substance that Plaintiff and the other members of the Class did not expect or consent to;
    h. ingested a product that was artificial, synthetic, or otherwise unnatural;
    i. ingested a substance that was of a lower quality than what Defendant promised;
    j. were denied the benefit of knowing what they ingested;
    k. were denied the benefit of truthful food labels;
    l. were forced unwittingly to support an industry that contributes to environmental, ecological, and/or health damage;
    m. were denied the benefit of supporting an industry that sells natural foods and contributes to environmental sustainability; and
    n. were denied the benefit of the beneficial properties of the natural foods promised.

62. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the other Class members would not have been injured. Among other things, they would not have been denied the benefit of the bargain. They would not have ingested a substance that they did not expect or consent to. They would not have been forced unwittingly to support an industry that contributes to environmental damage. They would not have suffered the

1  other injuries listed above. Accordingly, Plaintiff and the other Class members have suffered injury

2  in fact as a result of Defendant's wrongful conduct

3        63.    Plaintiff and the other Class members all paid money for the Products. However,

4  Plaintiff and the other Class members did not obtain the full value of the advertised Products due to

5  Defendant's misrepresentations and omissions. Plaintiff and the other Class members purchased,

6  purchased more of, or paid more for, the Products than they would have had they known the truth

7  about the Products' unnaturalness. Accordingly, Plaintiff and the other Class members have suffered

8  injury in fact and lost money or property as a result of Defendant's wrongful conduct.

9                              **CLASS ALLEGATIONS**

10       64.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules

11  of Civil Procedure on behalf of the following nationwide class (the "Class"):

12              all persons in the United States who purchased Defendant's Products (as
                defined herein) from October 12, 2006, to the date of certification of the
13              Class (the "Class Period"); excluded from the Class are officers and directors
                of Defendant; members of the immediate families of the officers and
14              directors of Defendant; Defendant's legal representatives, heirs, successors,
                or assigns; and any entity in which they have or have had a controlling
15              interest.

16

17       65.    Additionally, Plaintiff brings this action as a class action pursuant to Rule 23 of the

18  Federal Rules of Civil Procedure on behalf of the following sub-class (the "California Sub-Class"):

19              all California residents who purchased Defendant's Products (as defined
                herein) in California during the Class Period.
20

21       66.    At this time, Plaintiff does not know the exact number of members of the Class or

22  California Sub-Class; however, given the nature of the claims and the number of retail stores selling

23  Defendant's Products, Plaintiff believes that members are so numerous that joinder of all of them is

24  impracticable.

25       67.    There is a well-defined community of interest in the questions of law and fact

26  involved in this case. Questions of law and fact common to the members of the Class and the

27  California Sub-Class that predominate over questions that may affect individual members include:

28

a. Whether Defendant labeled, marketed, advertised, and/or sold the Products to Plaintiff and the other members of the Class and the California Sub-Class using false, misleading, and/or deceptive statements or representations, including statements or representations concerning the nature, quality, and/or ingredients of the Products;

b. Whether Defendant omitted and/or misrepresented material facts in connection with the sales of the Products;

c. Whether Defendant participated in and pursued the common course of conduct complained of herein; and

d. Whether Defendant's labeling, marketing, advertising, and/or selling of the Products as "natural" constitutes an unfair or deceptive consumer sales practice.

68.     Plaintiff's claims are typical of those of the Class and the California Sub-Class because Plaintiff, like all members of the Class and the California Sub-Class, purchased Defendant's Products bearing the "100% NATURAL" label and other representations of healthfulness and naturalness in a typical consumer setting at a premium price and sustained damages from Defendant's wrongful conduct.

69.     Plaintiff will fairly and adequately protect the interests of the Class and the California Sub-Class and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the Class and the California Sub-Class.

70.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

71.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class and the California Sub-Class, thereby making appropriate final injunctive or equitable relief with respect to the Class and the California Sub-Class as a whole.

72.     The prosecution of separate actions by members of the Class or the California Sub-Class would create a risk of establishing inconsistent rulings and/or incompatible standards of

CLASS ACTION COMPLAINT
- 15 -

1 | conduct for Defendant. For example, one court might enjoin Defendant from performing the
2 | challenged acts, whereas another might not. Additionally, individual actions may be dispositive of
3 | the interests of the Class or the California Sub-Class, even though certain members of the Class or
4 | the California Sub-Class are not parties to such actions.

5 | 73. Defendant's conduct is generally applicable to the Class and the California Sub-Class
6 | as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class and the
7 | California Sub-Class as a whole. As such, Defendant's systematic policies and practices make
8 | declaratory relief with respect to the Class and the California Sub-Class as a whole appropriate.

9

## CAUSES OF ACTION

10

## FIRST CAUSE OF ACTION

11

**(Violation of the Minnesota Uniform Deceptive Trade Practices Act,**
12 | **Minnesota Statutes § 325D.43 *et seq.*)**

13 | 74. Plaintiff repeats each and every allegation contained in the paragraphs above and
14 | incorporates such allegations by reference herein.

15 | 75. This claim is brought against Defendant on behalf of the nationwide Class and the
16 | California Sub-Class, pursuant to Minnesota's Uniform Deceptive Trade Practices Act ("UDTPA"),
17 | Minnesota Statutes § 325D.43 *et seq.*

18 | 76. Defendant's conduct violated and continues to violate the UDTPA in at least the
19 | following respects:

20 | a. In violation of § 325D.44(5), Defendant represented that goods or services have
21 | sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities
22 | that they do not have;

23 | b. In violation § 325D.44(7), Defendant represented that goods or services are of a
24 | particular standard, quality, or grade when they are of another.

25 | 77. Defendant engaged in these unfair and deceptive acts and practices with the intent
26 | that they result, and which did result, in the sale of food products to Plaintiff and the other Class and
27 | California Sub-Class members. As a result of Defendant's practices, Plaintiff and the other members
28 | of the Class and California Sub-Class have suffered damages as described herein.

1    78.    The fact that consumers purchased the food Products is material in that a reasonable

2  person would have considered the designation that the Products were "natural" to be an important

3  factor that would have meaningfully affected his or her decision regarding whether to purchase the

4  Products instead of other competing food products or to purchase the Products at a premium price.

5    79.    Defendant's representations injured Plaintiff and the other members of the Class and

6  California Sub-Class in that Plaintiff and the other Nationwide Class members paid for Products

7  portrayed as "natural" that, in actuality, are not natural at all because they contain GMOs and other

8  unnatural ingredients.

9    80.    As a result of Defendant's acts and practices as alleged in this Complaint, Plaintiff, on

10  behalf of himself and all other members of the Class and the California Sub-Class, seeks an order of

11  this Court that includes, but is not limited to, actual damages in an amount to be proven at trial,

12  pursuant to Minnesota Statutes § 8.31, and an injunction prohibiting Defendant from continuing to

13  engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

14  Plaintiff, on behalf of himself and the other Class and California Sub-Class members, additionally

15  seeks costs and reasonable attorneys' fees pursuant to Minnesota Statutes § 8.31.

16    81.    THEREFORE, Plaintiff prays for relief as set forth below.

17                        **SECOND CAUSE OF ACTION**

18            **(Violation of the California Consumers Legal Remedies Act,**
              **California Civil Code § 1750 *et seq.*)**
19            **(on behalf of the California Sub-Class only)**

20    82.    Plaintiff repeats each and every allegation contained in the paragraphs above and

21  incorporates such allegations by reference herein.

22    83.    This cause of action is brought pursuant to the California Consumers Legal Remedies

23  Act, California Civil Code § 1750 *et seq.* (the "CLRA"), on Plaintiff's behalf and on behalf of the

24  California Sub-Class.

25    84.    Defendant has waived the 30-day notice period required under the CLRA, California

26  Civil Code § 1782, with regard to seeking monetary damages.

27

28

1   85. Plaintiff and the other members of the California Sub-Class are "consumers," as the

2 term is defined by California Civil Code § 1761(d), because they bought the Products for personal,

3 family, or household purposes.

4   86. Plaintiff, the other members of the California Sub-Class, and Defendant have engaged

5 in "transactions," as that term is defined by California Civil Code § 1761(e).

6   87. The conduct alleged in this Complaint constitutes unfair methods of competition and

7 unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was

8 undertaken by Defendant in transactions intended to result in, and which did result in, the sale of

9 goods to consumers.

10   88. As alleged more fully above, Defendant has violated the CLRA by falsely

11 representing to Plaintiff and the other California Sub-Class members that the Products are "natural"

12 when, in fact, the Products are not natural because the Products contain GMOs and other unnatural

13 ingredients.

14   89. As a result of engaging in such conduct, Defendant has violated California Civil Code

15 § 1770(a)(5), (a)(7), and (a)(9).

16   90. Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of

17 this Court that includes, but is not limited to, an order enjoining Defendant from continuing to

18 engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

19   91. Plaintiff and the other members of the California Sub-Class may be irreparably

20 harmed and/or denied an effective and complete remedy if such an order is not granted.

21   92. The unfair and deceptive acts and practices of Defendant, as described above, present

22 a serious threat to Plaintiff and the other members of the California Sub-Class.

23   93. THEREFORE, Plaintiff prays for relief as set forth below.

24 //

25 //

26 //

27 //

28 //

1

## THIRD CAUSE OF ACTION

2

### (Violation of the California False Advertising Law,
### California Business and Professions Code § 17500 *et seq.*)
### (on behalf of the California Sub-Class only)

3

4       94.     Plaintiff repeats each and every allegation contained in the paragraphs above and

5   incorporates such allegations by reference herein.

6       95.     This cause of action is brought pursuant to California's False Advertising Law,

7   California Business and Professions Code § 17500 *et seq.* (the "FAL"), on Plaintiff's behalf and on

8   behalf of the California Sub-Class.

9       96.     Such acts of Defendant, as described above, and each of them constitute unlawful

10  business acts and practices.

11      97.     At all material times, Defendant engaged in a scheme of offering the Products for sale

12  to Plaintiff and the other members of the California Sub-Class by way of, *inter alia*, commercial

13  marketing and advertising, the World Wide Web (Internet), Product packaging and labeling, and

14  other promotional materials. As described more fully herein, Defendant's portrayal of the Products

15  as "natural" is misleading and deceptive because the Products contain GMOs and other unnatural

16  ingredients. Said advertisements and inducements were made within the State of California and

17  come within the definition of advertising contained in the FAL in that such promotional materials

18  were intended as inducements to purchase Defendant's Products and are statements disseminated by

19  Defendant to Plaintiff and the other California Sub-Class members that were intended to reach

20  Plaintiff and the other California Sub-Class members. Defendant knew, or in the exercise of

21  reasonable care should have known, that these representations were misleading and deceptive.

22      98.     In furtherance of said plan and scheme, Defendant has prepared and distributed within

23  the State of California – via commercial marketing and advertising, the World Wide Web (Internet),

24  Product packaging and labeling, and other promotional materials – statements that misleadingly and

25  deceptively represent the Products as being "natural." Consumers, including Plaintiff and the other

26  California Sub-Class members, necessarily and reasonably relied on these materials concerning

27  Defendant's Products. Consumers, including Plaintiff and the other California Sub-Class members,

28  were among the intended targets of such representations.

1       99.    The above acts of Defendant, in disseminating said misleading and deceptive

2 statements throughout the State of California to consumers, including Plaintiff and the other

3 members of the California Sub-Class, were and are likely to deceive reasonable consumers,

4 including Plaintiff and the other members of the California Sub-Class, by obfuscating the nature,

5 quality, and/or ingredients of the Products, in violation of the "misleading" prong of the FAL.

6       100.    The business practices alleged above are unlawful under the CLRA, which forbids

7 misleading and deceptive advertising.

8       101.    Plaintiff and the other members of the California Sub-Class have suffered injury in

9 fact and have lost money or property as a result of Defendant's violations of the FAL.

10     102.    As a result, Defendant has been unjustly enriched at the expense of Plaintiff and the

11 other members of the California Sub-Class. Plaintiff and the California Sub-Class, pursuant to

12 California Business and Professions Code § 17535, are entitled to an order of this Court enjoining

13 such future conduct on the part of Defendant, and such other orders and judgments which may be

14 necessary to disgorge Defendant's ill-gotten gains and restore to any person in interest any money

15 paid for their Products as a result of the wrongful conduct of Defendant.

16     103.    THEREFORE, Plaintiff prays for relief as set forth below.

17                          **FOURTH CAUSE OF ACTION**

18            **(Violation of the California Unfair Competition Law,**
             **California Business and Professions Code § 17200 *et seq.*)**

19                **(on behalf of the California Sub-Class only)**

20     104.    Plaintiff repeats each and every allegation contained in the paragraphs above and

21 incorporates such allegations by reference herein.

22     105.    This cause of action is brought pursuant to California's Unfair Competition Law,

23 California Business and Professions Code § 17200 *et seq.* (the "UCL"), on Plaintiff's behalf and on

24 behalf of the California Sub-Class.

25     106.    By committing the acts and practices alleged herein, Defendant has engaged in

26 deceptive, unfair, and unlawful business practices in violation of the UCL.

27     107.    Defendant has violated the UCL's proscription against engaging in unlawful conduct

28 as a result of its violations of (i) the CLRA, as alleged above, and (ii) the FAL, as alleged above.

1    108.    In addition, Defendant has violated the UCL's proscription against engaging in
2  unlawful conduct as a result of its violations of the Sherman Law, California Health & Safety Code
3  § 109875 *et seq.*, which forbids (1) misbranding of any food or drug, *id.* at §§ 10398 and 111445,
4  and (2) manufacturing, selling, delivering, holding, or offering for sale any food or drug that is
5  misbranded or delivering or proffering such for delivery, *id.* at §§110770 and 111450.

6    109.    In relevant part, the Sherman Law declares that food is misbranded if its labeling is
7  false or misleading in any particular way and further provides that it is unlawful for any person to
8  misbrand any food. California Health & Safety Code §§ 110660 and 110765.

9    110.    The Sherman Law defines a "person" as "any individual, firm, partnership, trust,
10  corporation, limited liability company, company, estate, public or private institution, association,
11  organization, group, city, county, city and county, political subdivision of this state, other
12  governmental agency within the state, and any representative, agent, or agency of any of the
13  foregoing." California Health & Safety Code § 109995. Defendant is a corporation and, therefore,
14  Defendant is a "person" within the meaning of the Sherman Law.

15    111.    As more fully described herein, Defendant's misleading marketing, advertising,
16  packaging, and labeling of the Products is likely to deceive a reasonable consumer. Indeed, Plaintiff
17  and the other California Sub-Class members were unquestionably deceived regarding the
18  characteristics of Defendant's Products, as Defendant's marketing, advertising, packaging, and
19  labeling of the Products misrepresents and/or omits the true nature, quality, and/or ingredients of the
20  Products. Defendant's portrayal of the Products as "natural" is misleading and deceptive because the
21  Products contain GMOs and other unnatural ingredients.

22    112.    Plaintiff and the other members of the California Sub-Class who purchased the
23  Products suffered a substantial injury by virtue of buying a product they would not have purchased
24  and/or paying a premium that they would not have absent Defendant's unlawful, fraudulent, and
25  unfair marketing, advertising, packaging, and labeling.

26    113.    There is no benefit to consumers or competition from deceptively marketing and
27  labeling products that contain GMOs as "natural." Indeed, the harm to consumers and competition is
28  substantial.

1     114.    Plaintiff and the other members of the California Sub-Class who purchased the
2 Products had no way of reasonably knowing that the Products they purchased were not as marketed,
3 advertised, packaged, and labeled. Thus, they could not have reasonably avoided the injury each of
4 them suffered.

5     115.    The gravity of the consequences of Defendant's conduct as described above
6 outweighs any justification, motive, or reason therefor, particularly considering the available legal
7 alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous,
8 offends established public policy, or is substantially injurious to Plaintiff and the other members of
9 the California Sub-Class.

10    116.    Defendant's violations of the UCL continue to this day.

11    117.    Pursuant to California Business and Professions Code § 17203, Plaintiff and the other
12 members of the California Sub-Class seek an order of this Court that includes, but is not limited to,
13 an order enjoining such future conduct on the part of Defendant and such other orders and judgments
14 which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in
15 interest any money paid for Defendant's Products as a result of the wrongful conduct of Defendant.

16    118.    THEREFORE, Plaintiff prays for relief as set forth below.

## FIFTH CAUSE OF ACTION

### (Breach of Express Warranty)

19    119.    Plaintiff repeats each and every allegation contained in the paragraphs above and
20 incorporates such allegations by reference herein.

21    120.    This cause of action is brought on Plaintiff's behalf and on behalf of the nationwide
22 Class and the California Sub-Class, pursuant to Minnesota law for the Class and pursuant to
23 California law for the California Sub-Class.

24    121.    Defendant provided Plaintiff and other members of the Class and the California Sub-
25 Class with written express warranties including, but not limited to, warranties that their Products
26 were "natural," as set forth above.

27    122.    Defendant breached these warranties. This breach resulted in damages to Plaintiff
28 and other members of the Class and the California Sub-Class, who bought Products but did not

1  receive the goods as warranted, in that the Products were not natural because they contained GMOs
2  and other unnatural ingredients.

3          123.    As a proximate result of the breach of warranties by Defendant, Plaintiff and the other
4  members of the Class and the California Sub-Class have suffered damages in an amount to be
5  determined at trial in that, among other things, they purchased and paid for Products that did not
6  conform to what was promised as promoted, marketed, advertised, packaged, and labeled by
7  Defendant, and they were deprived of the benefit of their bargain and spent money on Products that
8  did not have any value or had less value than warranted, or Products that they would not have
9  purchased and used had they known the true facts about them.

10         124.    THEREFORE, Plaintiff prays for relief as set forth below.

11                                    **SIXTH CAUSE OF ACTION**

12                        **(Breach of Implied Warranty of Merchantability)**

13         125.    Plaintiff repeats each and every allegation contained in the paragraphs above and
14  incorporates such allegations by reference herein.

15         126.    This cause of action is brought on Plaintiff's behalf and on behalf of the nationwide
16  Class and the California Sub-Class, pursuant to Minnesota law for the Class and pursuant to
17  California law for the California Sub-Class.

18         127.    Plaintiff and the other members of the Class and the California Sub-Class purchased
19  Defendant's Products, which were promoted, marketed, advertised, packaged, and labeled as being
20  "natural," as set forth above.  Pursuant to these sales, Defendant impliedly warranted that their
21  Products would be merchantable and fit for the ordinary purposes for which such goods are used and
22  would conform to the promises or affirmations of fact made in the Products' promotions, marketing,
23  advertising, packaging, and labels.  Plaintiff and the other members of the Class and the California
24  Sub-Class relied on Defendant's representations that the Products had particular characteristics, as
25  set forth above, and, at or about that time, Defendant sold the Products to Plaintiff and the other
26  members of the Class and the California Sub-Class.  By its representations regarding the reputable
27  nature of the company and related entities, and by its promotion, marketing, advertising, packaging
28  and labeling of the Products, Defendant warranted that the Products were "natural," as set forth

                                    CLASS ACTION COMPLAINT
                                            - 23 -

1 herein. Plaintiff and the other members of the Class and the California Sub-Class bought the
2 Products relying on Defendant's representations that the Products were "natural," when, in fact, the
3 Products were not natural because they contained GMOs and other unnatural ingredients.

4     128. Defendant breached the warranty implied at the time of sale in that Plaintiff and the
5 other members of the Class and the California Sub-Class did not receive goods that were natural as
6 represented and, thus, the goods were not merchantable as fit for the ordinary purposes for which
7 such goods are used or as promoted, marketed, advertised, packaged, labeled, or sold.

8     129. As a proximate result of this breach of warranty by Defendant, Plaintiff and the other
9 members of the Class and the California Sub-Class have suffered damages in an amount to be
10 determined at trial in that, among other things, they purchased and paid for Products that did not
11 conform to what was promised as promoted, marketed, advertised, packaged, and labeled by
12 Defendant, and they were deprived of the benefit of their bargain and spent money on Products that
13 did not have any value or had less value than warranted or Products that they would not have
14 purchased and used had they known the true facts about them.

15     130. THEREFORE, Plaintiff prays for relief as set forth below.

16 **SEVENTH CAUSE OF ACTION**

17 **(Breach of Implied Warranty of Fitness for Particular Purpose)**

18     131. Plaintiff repeats each and every allegation contained in the paragraphs above and
19 incorporates such allegations by reference herein.

20     132. This cause of action is brought on Plaintiff's behalf and on behalf of the nationwide
21 Class and the California Sub-Class, pursuant to Minnesota law for the Class and pursuant to
22 California law for the California Sub-Class.

23     133. Plaintiff and the other members of the Class and the California Sub-Class purchased
24 Defendant's Products, which were promoted, marketed, advertised, packaged, and labeled as being
25 "natural." Pursuant to these sales and by its promotion, marketing, advertising, packaging, and
26 labeling, Defendant impliedly warranted that the Products were natural, as set forth above. Plaintiff
27 and the other members of the Class and the California Sub-Class bought the Products from
28 Defendant relying on Defendant's skill and judgment in furnishing suitable goods as well as its

CLASS ACTION COMPLAINT
- 24 -

1 representation that the Products were natural, as set forth above. However, Defendant's Products
2 were not natural in that they contained GMOs and other unnatural ingredients.

3     134.   Defendant breached the warranty implied at the time of sale in that Plaintiff and the
4 other members of the Class and the California Sub-Class did not receive Products that were natural
5 as represented, and thus the goods were not fit for the purpose as promoted, marketed, advertised,
6 packaged, labeled, or sold.

7     135.   As a result of this breach of warranty by Defendant, Plaintiff and the other members
8 of the Class and the California Sub-Class have suffered damages in an amount to be determined at
9 trial in that, among other things, they purchased and paid for Products that did not conform to what
10 was promised as promoted, marketed, advertised, packaged, and labeled by Defendant, and they
11 were deprived of the benefit of their bargain and spent money on Products that did not have any
12 value or had less value than warranted or products they would not have purchased and used had they
13 known the true facts about them.

14     136.   THEREFORE, Plaintiff prays for relief as set forth below.

15                    **EIGHTH CAUSE OF ACTION**

16                 **(Deceit and/or Misrepresentation)**

17     137.   Plaintiff repeats each and every allegation contained in the paragraphs above and
18 incorporates such allegations by reference herein.

19     138.   This cause of action is brought on Plaintiff's behalf and on behalf of the Class and the
20 California Sub-Class, pursuant to Minnesota law for the Class and pursuant to California law for the
21 California Sub-Class.

22     139.   Defendant, through its labeling, advertising, and marketing of the Products, makes
23 uniform representations and offers regarding the nature of the Products, as described above.
24 Defendant engaged in, and continues to engage in, such fraudulent, misrepresentative, false, and/or
25 deceptive acts with full knowledge that such acts were, and are, in fact, misrepresentative, false, or
26 deceptive.

27     140.   The aforementioned misrepresentations, deceptive, and/or false acts and omissions
28 concern material facts that are essential to the analysis undertaken by Plaintiff and the other

CLASS ACTION COMPLAINT
- 25 -

1 members of the Class and the California Sub-Class in deciding whether to purchase Defendant's
2 Products.

3     141.    Plaintiff and the other members of the Class and the California Sub-Class would have
4 acted differently had they not been misled – *i.e.*, they would not have paid money for the Products in
5 the first place and/or they would not have paid a premium price for the Products over similar
6 products.

7     142.    Defendant has a duty to correct the misinformation it disseminates through its
8 advertising of the Products. By not informing Plaintiff and the other members of the Class and the
9 California Sub-Class, Defendant breached this duty. Defendant also gained financially from, and as
10 a result of, this breach. Moreover, Defendant has a duty to disclose the omitted facts because
11 Defendant was in possession of knowledge about the identity, formulation, and production of the
12 Products and of their ingredients, and this information is not reasonably available to consumers.

13     143.    By and through such deceits, misrepresentations, and/or omissions, Defendant
14 intended to induce Plaintiff and the other members of the Class and the California Sub-Class to alter
15 their position to their detriment.

16     144.    Plaintiff and the other members of the Class and the California Sub-Class justifiably
17 and reasonably relied on Defendant's misrepresentations, and, as such, were damaged by Defendant.

18     145.    As a direct and proximate result of Defendant's deceits and/or misrepresentations,
19 Plaintiff and the other Class and California Sub-Class members have suffered damages in an amount
20 equal to the amount they paid for Defendant's Products. The exact amount of these damages will be
21 proven at trial.

22     146.    Defendant acted with intent to defraud, or with reckless or negligent disregard of the
23 rights of, Plaintiff and the other Class and California Sub-Class members.

24     147.    Plaintiff and the Class and California Sub-Class members are entitled to punitive
25 damages.

26     148.    THEREFORE, Plaintiff prays for relief as set forth below.

27

28

## NINTH CAUSE OF ACTION

### (Unjust Enrichment)

149.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

150.    This cause of action is brought on Plaintiff's behalf and on behalf of the nationwide Class and the California Sub-Class, pursuant to Minnesota law for the Class and pursuant to California law for the California Sub-Class.

151.    As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the Products, Defendant was enriched at the expense of Plaintiff and the other members of the Class and the California Sub-Class through the payment of the purchase price for Defendant's Products.

152.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and the other members of the Class and the California Sub-Class, in light of the fact that the Products purchased by Plaintiff and the other members of the Class and the California Sub-Class were not what Defendant purported them to be. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the other members of the Class and the California Sub-Class for the monies paid to Defendant for such Products.

153.    THEREFORE, Plaintiff prays for relief as set forth below.

//
//
//
//
//
//
//
//
//

CLASS ACTION COMPLAINT
- 27 -

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment on behalf of himself and the proposed Class and California Sub-Class providing such relief as follows:

A.    Certification of the nationwide Class and the California Sub-Class proposed herein under Federal Rule of Civil Procedure 23(a) and (b)(3); appointment of Plaintiff as representative of the Class and the California Sub-Class; and appointment of his undersigned counsel as counsel for the Class and the California Sub-Class;

B.    A declaration that Defendant is financially responsible for notifying members of the Class and the California Sub-Class of the pendency of this suit;

C.    Restitution to the California Sub-Class pursuant to California Business and Professions Code §§ 17203 and 17535;

D.    Disgorgement to the California Sub-Class pursuant to California Business and Professions Code §§ 17203 and 17535;

E.    Damages, together with costs and disbursements, including reasonable attorneys' fees, pursuant to Minnesota Statutes § 8.31(3a);

F.    Injunctive relief, pursuant to Minnesota Statutes § 325D.43 *et seq.*, enjoining Defendant's unlawful and deceptive acts;

G.    Injunctive relief on behalf of the California Sub-Class, pursuant to California Business and Professions Code §§ 17203 and 17535 and pursuant to California Civil Code § 1780, enjoining Defendant's unlawful and deceptive acts;

H.    Monetary damages, including, but not limited to any compensatory, incidental, or consequential damages in an amount to be determined at trial, together with prejudgment interest at the maximum rate allowable by law with respect to the common law claims alleged;

I.    Statutory damages in the maximum amount provided by law;

J.    Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

K.    An award to Plaintiff and the other Class and California Sub-Class members of the reasonable costs and expenses of the lawsuit, including their attorneys' fees; and

L.    Such further relief as this Court may deem just and proper.

1

**JURY TRIAL DEMANDED**

2

Plaintiff and the Class members hereby demand a trial by jury.

3      Dated: October 12, 2012              **REESE RICHMAN LLP**

4

5                                     Michael R. Reese (State Bar No. 206773)

6                                     **REESE RICHMAN LLP**
                                      Kim E. Richman

7                                     875 Avenue of the Americas, 18th Floor
                                    New York, New York 10001

8                                     Telephone:    (212) 643-0500

9                                     Facsimile:     (212) 253-4272
                                    Email:         mreese@reeserichman.com

10                                                    krichman@reeserichman.com

11                                     **THE GOLAN FIRM**

12                                     Yvette Golan
                                    1919 Decatur St.

13                                     Houston, Texas 77007
                                    Telephone:    (866) 298-4150, ext. 101

14                                     Facsimile:     (928) 441-8250
                                    Email:         ygolan@tgfirm.com

15

16                                     *Counsel for Plaintiff and the Proposed Class*

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

*Bohac v. General Mills*

Ex. 1-1





*Bohac v. General Mills*







*Bohac v. General Mills*

Ex. 1-6



# EXHIBIT 2

*Bohac v. General Mills*                                                                                    Exhibit 2-1



# 100% Natural.
# 100% Delicious.

Since 1975, Nature Valley has been making
great tasting crunchy granola bars with 100%
natural ingredients like whole grain oats & honey.



# EXHIBIT 3



# Laboratory Developments, L.L.C.

P.O. Box 55364 Portland, OR 97238 • 503.705.0666 • Email: nkahl@msn.com

Reese Richman, LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001

Michael R. Reese
212.643.0500- Phone
212.253.4272- Fax

# CERTIFICATE OF ANALYSIS

June 6, 2012

For samples received 4-12-12 for the detection of genetically modified organisms (GMO).

**Results:**

| Sample No. | Sample Description | | GMO |
|------------|--------------------|---|-----|
| 0412001-RR | Nature Valley Crunchy Granola Bars- Oats 'N Honey | | |
| | | 35S | Present |
| | | NOS | Present |

**Notes:**
Test sample was analyzed for the presence of GMO by qualitative PCR analysis. DNA was extracted and analyzed for the presence of the 35S promoter and NOS terminator. No inhibition was observed and soy DNA was detected at reduced levels.

GMO Detection Limit = 0.01%

Approved By:

Nidal Kahl, Director

www.BiogenLabDevelopments.com  888. 9 BIOGEN • 503.698.7846 Office • 503.698.7847-Fax • Federal ID# 93-1313827

# EXHIBIT 4

*Bohac v. General Mills*

Ex. 4-1

## Crunchy: Oats n' Honey

Ingredients: Whole Grain Oats, Sugar, Canola Oil, Yellow Corn Flour, Honey, Soy Flour, Brown Sugar Syrup, Salt, Soy Lecithin, Baking Soda, Natural Flavor. CONTAINS SOY. MAY CONTAIN PEANUT ALMOND AND PECAN INGREDIENTS.

DISTRIBUTED BY
GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
© 2012 General Mills

Carbohydrate Choices: 2

3202646161

## Crunchy: Roasted Almond

Ingredients: Whole Grain Oats, Sugar, Canola Oil, Almond Pieces, Brown Sugar Syrup, Yellow Corn Flour, Soy Flour, Salt, Soy Lecithin, Baking Soda, Natural Flavor. CONTAINS ALMOND, SOY: MAY CONTAIN PEANUT AND PECAN INGREDIENTS.

DISTRIBUTED BY
GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
© 2011 General Mills

Carbohydrate Choices: 2

3712892151

## Crunchy: Peanut Butter

Ingredients: Whole Grain Oats, Sugar, Canola Oil, Peanut Butter (peanuts, salt), Yellow Corn Flour, Brown Sugar Syrup, Soy Flour, Salt, Soy Lecithin, Baking Soda. CONTAINS PEANUT, SOY: MAY CONTAIN ALMOND AND PECAN INGREDIENTS.

DISTRIBUTED BY
GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
© 2012 General Mills

Carbohydrate Choices: 2

3202647156

## Crunchy: Apple Crisp

Ingredients: Whole Grain Oats, Sugar, Canola Oil, Yellow Corn Flour, Brown Sugar Syrup, Soy Flour, Dried Apples, Salt, Soy Lecithin, Baking Soda, Cinnamon, Natural Flavor. CONTAINS SOY: MAY CONTAIN PEANUT, ALMOND AND PECAN INGREDIENTS.

DISTRIBUTED BY
GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
© 2011 General Mills

Carbohydrate Choices: 2

3712957151

*Bohac v. General Mills*

Ex. 4-2

### Crunchy: Cinnamon

Ingredients: Whole Grain Oats,
Sugar, Canola Oil, Yellow Corn Flour,
Brown Sugar Syrup, Soy Flour, Salt,
Cinnamon, Soy Lecithin, Baking Soda.
CONTAINS SOY; MAY CONTAIN PEANUT,
ALMOND AND PECAN INGREDIENTS

DISTRIBUTED BY
GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
© 2011 General Mills

Carbohydrate Choices: 2

3202645151

### Crunchy: Maple Brown Sugar

Ingredients: Whole Grain Oats, Sugar,
Canola Oil, Yellow Corn Flour, Soy
Flour, Brown Sugar Syrup, Maple
Syrup, Salt, Soy Lecithin, Baking
Soda, Natural Flavor.
CONTAINS SOY: MAY CONTAIN PEANUT,
ALMOND AND PECAN INGREDIENTS.

DISTRIBUTED BY
GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
© 2011 General Mills

Carbohydrate Choices: 2

3712669155

### Crunchy: Pecan Crunch

Ingredients: Whole Grain Oats,
Sugar, Canola Oil, Brown Sugar
Syrup, Pecan Pieces, Yellow Corn
Flour, Soy Flour, Salt, Soy Lecithin,
Baking Soda, Natural Flavor.
CONTAINS PECAN, SOY; MAY CONTAIN
PEANUT AND ALMOND INGREDIENTS.

DISTRIBUTED BY
GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
© 2011 General Mills

Carbohydrate Choices: 2

3607716155

### Crunchy: Oats n' Dark Chocolate

Ingredients: Whole Grain Oats, Sugar,
Canola Oil, Dark Chocolate Pieces (sugar,
chocolate liquor, cocoa butter, soy lecithin,
natural flavor, salt), Yellow Corn Flour, Honey,
Soy Flour, Cocoa, Brown Sugar Syrup, Salt,
Soy Lecithin, Natural Flavor, Baking Soda.
CONTAINS SOY: MAY CONTAIN PEANUT,
ALMOND AND PECAN INGREDIENTS.

DIST. BY GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
© 2012 General Mills

Carbohydrate Choices: 2

3526223103

*Bohac v. General Mills*

## Crunchy: Dark Chocolate Peanut Butter

Ingredients: Whole Grain Oats, Sugar, Canola Oil, Dark Chocolate Chips (sugar, chocolate liquor, cocoa butter, soy lecithin, natural flavor, salt), Roasted Peanuts, Yellow Corn Flour, Soy Flour, Peanut Butter (peanuts, salt), Brown Sugar Syrup, Honey, Salt, Natural Flavor, Soy Lecithin, Baking Soda.
CONTAINS PEANUT, SOY: MAY CONTAIN ALMOND AND PECAN INGREDIENTS.

DIST. BY GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
© 2012 General Mills
Carbohydrate Choices: 2
3737140103

## Sweet & Salty Nut: Almond

Ingredients: Almonds, Whole Grain Oats, High Maltose Corn Syrup, Sugar, Tapioca Syrup, Rice Flour, Palm Kernel Oil, Whole Grain Wheat, Fructose, Honey Roasted Almond Butter (almonds, honey, maltodextrin, palm oil, mixed tocopherols), Canola Oil, Maltodextrin, Salt, Soy Lecithin, Reduced Minerals Whey, Nonfat Milk, Barley Malt Extract, Baking Soda, Natural Flavor, Mixed Tocopherols Added to Retain Freshness.
CONTAINS ALMOND, WHEAT, MILK AND SOY: MAY CONTAIN PEANUT INGREDIENTS.

DIST. BY GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
© 2012 General Mills
Carbohydrate Choices: 1½
3474653108

## Sweet & Salty Nut: Peanut

Ingredients: Roasted Peanuts, High Maltose Corn Syrup, Sugar, Whole Grain Oats, Tapioca Syrup, Palm Kernel Oil, Rice Flour, Fructose, Whole Grain Wheat, Peanut Butter (peanuts, salt), Canola Oil, Maltodextrin, Salt, Partially Defatted Peanut Flour, Soy Lecithin, Reduced Minerals Whey, Nonfat Milk, Barley Malt Extract, Honey Roasted Almond Butter (almonds, honey, maltodextrin, palm oil, mixed tocopherols), Baking Soda, Natural Flavor, Mixed Tocopherols Added to Retain Freshness.
CONTAINS PEANUT, WHEAT, MILK, SOY AND ALMOND INGREDIENTS.
DISTRIBUTED BY GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
© 2012 General Mills
Carbohydrate Choices: 1
3499255107

## Sweet & Salty Nut: Cashew

Ingredients: Cashews Roasted in Safflower Oil, Whole Grain Oats, High Maltose Corn Syrup, Sugar, Tapioca Syrup, Rice Flour, Palm Kernel Oil, Whole Grain Wheat, Fructose, Cashew Butter (cashew nuts, safflower oil), Canola Oil, Maltodextrin, Salt, Soy Lecithin, Reduced Minerals Whey, Nonfat Milk, Barley Malt Extract, Partially Defatted Peanut Flour, Baking Soda, Natural Flavor, Mixed Tocopherols Added to Retain Freshness.
CONTAINS CASHEW, WHEAT, MILK, SOY, PEANUT: MAY CONTAIN PECAN, MACADAMIA AND ALMOND INGREDIENTS.
DISTRIBUTED BY GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
© 2012 General Mills
Carbohydrate Choices: 1 1/2
3567974102

*Bohac v. General Mills*

Ex. 4-4

## Sweet & Salty Nut: Roasted Mixed Nut

Ingredients: Roasted Peanuts, High Maltose Corn Syrup, Sugar, Whole Grain Oats, Tapioca Syrup, Palm Kernel Oil, Rice Flour, Cashews Roasted in Safflower Oil, Almonds, Fructose, Whole Grain Wheat, Canola Oil, Maltodextrin, Salt, Soy Lecithin, Reduced Minerals Whey, Nonfat Milk, Partially Defatted Peanut Flour, Honey Roasted Almond Butter (almonds, honey, maltodextrin, palm oil, mixed tocopherols), Barley Malt Extract, Cashew Butter (cashew nuts, safflower oil), Baking Soda, Natural Flavor, Mixed Tocopherols Added to Retain Freshness.
CONTAINS PEANUT, CASHEW, ALMOND, WHEAT, MILK, SOY. MAY CONTAIN PECAN AND MACADAMIA INGREDIENTS.
DISTRIBUTED BY GENERAL MILLS SALES, INC. MINNEAPOLIS, MN 55440 USA
© 2012 General Mills
Carbohydrate Choices: 1 1/2
3615820102

## Sweet & Salty Nut: Dark Chocolate, Peanut, Almond

Ingredients: Roasted Peanuts, Sugar, Corn Syrup, Whole Grain Oats, Dark Chocolate Chunks (sugar, chocolate liquor, cocoa butter, soy lecithin, natural flavor), Tapioca Syrup, Palm Kernel Oil, Rice Flour, Almonds, Whole Grain Wheat, Fructose, Cocoa, Canola Oil, Salt, Rice Maltodextrin, Soy Lecithin, Milk, Barley Malt Extract, Baking Soda, Natural Flavor, Mixed Tocopherols Added to Retain Freshness.
CONTAINS PEANUT, ALMOND, WHEAT, SOY AND MILK INGREDIENTS.
DISTRIBUTED BY GENERAL MILLS SALES, INC., MINNEAPOLIS, MN 55440 USA
© 2012 General Mills
Carbohydrate Choices: 1½
3774410107

## Protein: Peanut Butter Dark Chocolate

Ingredients: Roasted Peanuts, Soy Protein Isolate, Chicory Root Extract, Sugar, Vegetable Oils (palm kernel, palm, canola, peanut), Whey Protein Concentrate, High Maltose Corn Syrup, Cocoa, Fructose, Peanut Butter (peanuts, salt), Vegetable Glycerin, Rice Starch, Honey, Rice Maltodextrin, Salt, Soy Lecithin, Natural Flavor. CONTAINS PEANUT, SOY AND MILK INGREDIENTS.
DIST. BY GENERAL MILLS SALES, INC. MINNEAPOLIS, MN 55440 USA
© 2011 General Mills
Carbohydrate Choices: 1
3553259102

*Bohac v. General Mills*

Ex. 4-5

## Protein: Peanut, Almond & Dark Chocolate

Ingredients: Roasted Peanuts, Almonds, Soy Protein Isolate, Chicory Root Extract, Sugar, Vegetable Oils (palm kernel, palm, canola) Roasted Sunflower Seeds (sunflower seeds, sunflower oil) Toasted Coconut Whey Protein Concentrate, Tapioca Syrup, High Maltose Corn Syrup, Fructose, Cocoa, Vegetable Glycerin, Rice Starch, Rice Maltodextrin, Salt, Soy Lecithin, Dextrose, Baking Soda, Natural Flavor. CONTAINS PEANUT, ALMOND, SOY, SUNFLOWER AND MILK INGREDIENTS. DIST BY GENERAL MILLS SALES INC., NPLE, MN 55440 USA
© 2011 General Mills

Carbohydrate Choices: 1

3854575102

## Granola Thins: Dark Chocolate

Ingredients: Whole Grain Oats, Sugar, Vegetable Oil (canola, palm kernel, palm), Rice Flour, High Maltose Corn Syrup, Cocoa, Honey, Rice Maltodextrin, Salt, Soy Lecithin, Milk, Baking Soda, Barley Malt Extract, Natural Flavor.

CONTAINS SOY, MILK; MAY CONTAIN EGG, PEANUT, ALMOND, WALNUT, PECAN, CASHEW, WHEAT, SUNFLOWER AND MACADAMIA INGREDIENTS.

DISTRIBUTED BY GENERAL MILLS SALES, INC. MINNEAPOLIS, MN 55440 USA
© 2012 General Mills

Carbohydrate Choices: 1

3362095108

## Granola Thins: Peanut Butter

Ingredients: Whole Grain Oats, Sugar, Vegetable Oil (canola, palm kernel, palm), Roasted Peanuts, Rice Flour, High Maltose Corn Syrup, Partially Defatted Peanut Flour, Peanut Butter (peanuts), Honey, Rice Maltodextrin, Nonfat Milk, Salt, Whey, Soy Lecithin, Baking Soda, Barley Malt Extract, Natural Flavor. CONTAINS PEANUT, MILK, SOY; MAY CONTAIN EGG, ALMOND, WALNUT, PECAN, CASHEW, WHEAT, SUNFLOWER AND MACADAMIA INGREDIENTS.

DISTRIBUTED BY GENERAL MILLS SALES, INC. MINNEAPOLIS, MN 55440 USA
© 2012 General Mills

Carbohydrate Choices: 1/2

3382546108

## Granola Thins: Dark Chocolate Peanut Butter

Ingredients: Whole Grain Oats, Sugar, Vegetable Oils (canola, palm kernel, palm), Roasted Peanuts, Rice Flour, High Maltose Corn Syrup, Cocoa. Contains 2% or less of: Peanut Flour Partially Defatted, Honey, Rice Maltodextrin, Salt, Soy Lecithin, Milk, Baking Soda, Malt Extract, Natural Flavor. CONTAINS PEANUT, SOY, MILK; MAY CONTAIN ALMOND, CASHEW, PECAN, MACADAMIA, SUNFLOWER, WHEAT AND EGG INGREDIENTS.
DISTRIBUTED BY GENERAL MILLS SALES, INC. MINNEAPOLIS, MN 55440 USA
© 2012 General Mills

Carbohydrate Choices: 1

3241947103

*Bohac v. General Mills*

Trail Mix: Fruit & Nut

Ingredients: Whole Grain Oats, High
Maltose Corn Syrup, Raisins, Almonds,
Roasted Peanuts, Sugar, Rice Flour,
Chicory Root Extract, Fructose,
Cranberries, Canola Oil, Maltodextrin,
Vegetable Glycerin, Soy Lecithin, Salt,
Barley Malt Extract, Baking Soda,
Natural Flavor, Mixed Tocopherols
Added to Retain Freshness.
CONTAINS ALMOND, PEANUT AND SOY;
MAY CONTAIN SUNFLOWER INGREDIENTS.
DISTRIBUTED BY GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
© 2012 General Mills

Carbohydrate Choices: 1½

3418030102

Trail Mix: Dark Chocolate & Nut

Ingredients: Whole Grain Oats, High
Maltose Corn Syrup, Semisweet
Chocolate Chunks (sugar, chocolate
liquor, cocoa butter, soy lecithin, natural
flavor). Roasted Peanuts, Raisins, Rice
Flour, Chicory Root Extract, Sugar,
Fructose, Canola Oil, Maltodextrin,
Vegetable Glycerin, Soy Lecithin, Salt,
Barley Malt Extract, Baking Soda,
Natural Flavor, Mixed Tocopherols
Added to Retain Freshness.
CONTAINS PEANUT, SOY; MAY
CONTAIN ALMOND, MILK, HAZELNUT,
CASHEW, WHEAT, SUNFLOWER AND
MACADAMIA INGREDIENTS.
DIST BY GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
© 2012 General Mills

Carbohydrate Choices: 1½

3270330110

Trail Mix: Cranberry & Pomegranate

Ingredients: Whole Grain Oats, High Maltose Corn
Syrup, Rice Crisps (rice flour, sugar, barley malt
extract, salt, calcium carbonate, mixed tocopherols
added to retain freshness), Sugar, Almonds, Honey,
Dried Cranberries, Fructose, Canola Oil,
Maltodextrin, Dried Pomegranate Arils, Soy
Lecithin, Salt, Baking Soda, Natural Flavor.
CONTAINS ALMOND, SOY; MAY CONTAIN
PEANUT, MILK, HAZELNUT, CASHEW, WHEAT,
SUNFLOWER AND MACADAMIA INGREDIENTS.
DIST. BY General Mills Sales, Inc.
MINNEAPOLIS, MN 55440 USA
© 2012 General Mills

Carbohydrate Choices: 1½

3595319106

Roasted Nut Crunch: Almond Crunch

Ingredients: Almonds, Roasted Peanuts, Sugar,
Sunflower Seeds, Corn Syrup, Yellow Corn
Flour, Salt, Corn Oil, Calcium Carbonate, Color
Added, Tocopherol Added to Retain Freshness.
CONTAINS ALMOND, PEANUT AND SUNFLOWER;
MAY CONTAIN SOY INGREDIENTS.
DISTRIBUTED BY GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
GLUTEN FREE
© 2012 General Mills

Carbohydrate Choices: 1

3602942108

*Bohac v. General Mills*

## Roasted Nut Crunch: Peanut Crunch

Ingredients: Roasted Peanuts, Sunflower Seeds, Sugar, Corn Syrup, Yellow Corn Flour, Salt, Corn Oil, Calcium Carbonate, Color Added. Tocopherol Added to Retain Freshness. CONTAINS PEANUT, SUNFLOWER, MAY CONTAIN ALMOND AND SOY INGREDIENTS.

DISTRIBUTED BY GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
GLUTEN FREE
© 2012 General Mills

Carbohydrate Choices: 1

3593210108

## Yogurt: Vanilla

Ingredients: Granola (whole grain oats, sugar, canola oil, fructose, salt, baking soda), Corn Syrup, Sugar, Rice Flour, Whole Grain Wheat, Honey, Palm Kernel Oil, Dextrose, Maltodextrin, Canola Oil, Yogurt Powder (nonfat milk, whey protein concentrate, cultures), Soy Lecithin, Calcium Carbonate, Nonfat Dry Milk, Barley Malt Extract, Salt, Soy Lecithin, Natural Flavor, Mixed Tocopherols Added to Retain Freshness. CONTAINS WHEAT, MILK, SOY; MAY CONTAIN PEANUT, ALMOND AND SUNFLOWER INGREDIENTS.

DISTRIBUTED BY GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA

Carbohydrate Choices: 2

3195265135

## Yogurt: Strawberry

Ingredients: Granola (whole grain oats, sugar, canola oil, fructose, salt, baking soda), Corn Syrup, Sugar, Rice Flour, Whole Grain Wheat, Honey, Palm Kernel Oil, Dextrose, Maltodextrin, Canola Oil, Soy Lecithin, Yogurt Powder (nonfat milk, whey protein concentrate, cultures), Calcium Carbonate, Nonfat Dry Milk, Strawberry Powder, Barley Malt Extract, Salt, Natural Flavor, Mixed Tocopherols Added to Retain Freshness. CONTAINS WHEAT, MILK, SOY; MAY CONTAIN PEANUT, ALMOND AND SUNFLOWER INGREDIENTS.

DISTRIBUTED BY GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
© 2012 General Mills

Carbohydrate Choices: 2

3167998135