UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN BOHAC,<br>        Plaintiff,<br>    v.<br>GENERAL MILLS, INC.,<br>        Defendant. | Case No. 12-cv-05280-WHO<br><br>**ORDER DENYING MOTION TO STAY**<br>Re: Dkt. No. 28 |

## INTRODUCTION

Plaintiff Sean Bohac brings this putative class action against defendant General Mills, Inc., asserting that the use of the terms "100% NATURAL," "all natural," or "natural" on General Mills's "Nature Valley" products (the "products") is deceptive and misleading because of the alleged presence of genetically modified organisms ("GMOs"), as well as high fructose corn syrup ("HFCS"), high maltose corn syrup ("HMCS"), maltodextrin, and other similar ingredients. General Mills moves to stay this case because it argues that the United States Food and Drug Administration ("FDA") has primary jurisdiction over the term "natural" and two judges, including one in this district, have stayed their cases pending a response to a referral to the FDA the question of whether products with bioengineered ingredients may be labeled "natural." General Mills also argues that the Court should exercise its inherent authority to stay this case. After considering the parties' briefs and argument, and for the reasons below, General Mills's Motion to Stay is DENIED.

## BACKGROUND

The Complaint alleges the following:

Plaintiff Sean Bohac "purchased several varieties of the Products over the last three or four

years at retail prices." Compl. (Dkt. No. 1) ¶ 20. Bohac "relied upon the representation that Nature Valley was '100% NATURAL'" and also "relied upon the name 'Nature Valley,' representations such as 'Natural Energy Bar' . . . and 'pastoral' images on the packaging, all of which convey qualities of healthfulness and naturalness to a reasonable consumer." *Id.* He would not have purchased the products had he known that they "were not, in fact, 'natural.'" *Id.*

GMOs are "fundamentally different from naturally existing plants because inserting foreign genes into plant DNA alters the original genes," which "can yield alternation in the nutritional content of the food, toxic and allergenic effects, poor crop performance, and generations of environmental damage." *Id*. ¶ 29. "A product that is derived from GMOs is unnatural by definition." *Id.* ¶ 25. In addition to GMOs, the products also contain "a variety of other heavily processed, unnatural ingredients," such as HFCS, HMCS, or maltodextrin. *Id*. ¶ 33.

Even though General Mills knew "GMOs are not natural and that [the products] contain GMOs and other unnatural, highly processed substances," General Mills "engaged in a widespread marketing and advertising campaign to portray the Products as being 'natural.'" *Id.* ¶ 50. General Mills "markets its Products as 'natural'" largely by placing the term "'100% NATURAL' on the front of multi-bar boxes of the granola bar Products, as well as on the back, top, and bottom of the granola bar Product boxes and on the wrappers that contain each individual granola bar." *Id.* ¶¶ 49 & 52.

While the FDA has not explicitly defined the term "natural," it "has defined the outer boundaries of the use of the term 'natural' by stating that a product is not natural if it contains synthetic or artificial ingredients." *Id*. ¶ 10. According to federal regulations promulgated by the United States Department of Agriculture ("USDA"), an ingredient is synthetic if it is a "substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources." *Id*. ¶ 11 (quoting 7 C.F.R. § 205.2). "Similarly, the USDA's Food Safety and Inspection Service ('FSIS') defines a 'natural' product as a product that does not contain any artificial or synthetic ingredients and does not contain any ingredient that is more than 'minimally processed.'" *Id.* ¶ 10.

"Consumers frequently rely on food label representations and information in making

2

1  purchase decisions." *Id.* ¶ 56. Bohac "reasonably relied to [his] detriment on [General Mills's]
2  misleading representations and omissions. [General Mills's] misleading affirmative statements
3  about the 'naturalness' of its Products obscured the material facts that [General Mills] failed to
4  disclose about the unnaturalness of its Products." *Id.* General Mills's "deceptive representations
5  and omissions are material in that a reasonable person would attach importance to such
6  information and would be induced to act upon such information in making purchase decisions."
7  *Id.* ¶ 57.

8  Bohac paid for the products, but "did not obtain the full value of the advertised Products
9  due to [General Mills's] misrepresentations and omissions." *Id.* ¶ 63. Therefore, Bohac "suffered
10  injury in fact and lost money or property as a result of [General Mills's] wrongful conduct." *Id.*

**PROCEDURAL HISTORY**

12  Bohac brings this putative class action on behalf of "all persons in the United States who
13  purchased [General Mills's] Products [as defined in the Complaint] from October 12, 2006, to the
14  date of certification of the Class." *Id.* ¶ 64. He brings the following causes of action: (1)
15  violation of the Minnesota Uniform Deceptive Trade Practices Act, MINN. STAT. §§ 325D.43 *et
16  seq.*; (2) violation of the California Consumers Legal Remedies Act, CAL. CIV. CODE §§ 1750 *et
17  seq.*; (3) violation of the California False Advertising Law, CAL. BUS. & PROF. CODE §§ 17500 *et
18  seq.*; (4) violation of the California Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200
19  *et seq.*; (5) breach of express warranty; (6) breach of implied warranty of merchantability; (7)
20  breach of implied warranty of fitness for a particular purpose; (8) deceit or misrepresentation; and
21  (9) unjust enrichment.

22  On July 29, 2013, the Court related this case with two others in this district: *Janney v.
23  General Mills, Inc.*, No. 12-cv-3919, and *Rojas v. General Mills, Inc.*, No. 12-cv-5099.

24  General Mills moves to stay this case based on the primary jurisdiction doctrine and the
25  Court's inherent case-management authority. General Mills contends that a stay is especially
26  appropriate in light of the recent referral by a judge in this district to the FDA the issue of whether
27  products with bioengineered ingredients may be labeled "natural." *See Cox v. Gruma Corp.*, No.
28  12-cv-6502-YGR, 2013 WL 3828800, at *2 (N.D. Cal. July 11, 2013). General Mills also notes

3

that a judge in the District of Colorado stayed a similar case pending a response from the FDA to the *Cox* referral. *See Van Atta v. Gen. Mills, Inc.*, No. 12-cv-2815-MSK-MJW (D. Colo. July 18, 2013).

## DISCUSSION[1]

### I. THE PRIMARY JURISDICTION DOCTRINE DOES NOT APPLY.

Judges in this district have repeatedly declined invoking the primary jurisdiction doctrine in cases asking whether the term "natural" as used on food labels is false or misleading, including another case that this Court found related to this case. *See, e.g.*, *Janney v. General Mills*, No. 12-cv-3919-PJH, 2013 WL 1962360, at *7 (N.D. Cal. May 10, 2013); *Kosta v. Del Monte Corp.*, No. 12-cv-1722-YGR, 2013 WL 2147413, (N.D. Cal. May 15, 2013); *Brazil v. Dole Food Co.*, No. 12-cv-1831-LHK, 2013 WL 1209955, at *10 (N.D. Cal. March 25, 2013); *Ivie v. Kraft Foods Global, Inc.*, No. 12-cv-2554-RMW, 2013 WL 685372, at *7 (N.D. Cal. Feb. 25, 2013); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898-99 (N.D. Cal. 2012) (Breyer, J.). The Court finds no reason to depart from their considered judgment.

"The [primary jurisdiction] doctrine is applicable whenever the enforcement of a claim subject to a specific regulatory scheme requires resolution of issues that are within the special competence of an administrative body." *Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 778 F.2d 1365, 1370 (9th Cir. 1985) (quotation marks omitted). "The doctrine does not, however, require that all claims within an agency's purview be decided by the agency." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006) (citation and quotation marks omitted). The Ninth Circuit has applied four non-exclusive factors identified in *United States v. General Dynamics Corp.*, 828 F.2d 1356 (9th Cir. 1987), to determine whether the doctrine applies. "Under this test, the doctrine applies where there is '(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.'" *Davel Commc'ns*,

---

[1] This section is substantially similar to the Discussion in the Court's Order Denying Motion to Stay in *Janney v. General Mills, Inc.*, No. 12-cv-3919.

460 F.3d at 1086 (quoting *Gen. Dynamics Corp.*, 828 F.2d at 1362).

Invocation of the doctrine is appropriate where a case "requires resolution of an issue of first impression" or when the issue is not "within the conventional experience of judges." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002) (citing *Nat'l Commc'ns Ass'n. v. AT&T Corp.*, 46 F.3d 220, 222 (2d Cir. 1995)); *see also Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) ("the doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed *in the first instance* by the agency with regulatory authority over the relevant industry rather than by the judicial branch") (emphasis added). A court may decline to hear a case if it determines that the doctrine applies. *Id.* at 1088.

While issues related to food labeling are undoubtedly within the expertise of the FDA, this case does not involve a situation in which the Court should abstain from deciding the questions before it. Deciding what "natural" means is not "an issue of first impression" or one that has not been addressed "in the first instance" by the FDA. *Brown*, 277 F.3d at 1172; *Clark*, 523 F.3d at 1114. As General Mills itself concedes, "the FDA has adopted a policy for use [of] the word 'natural' on food labels, one that it enforces through administrative action." Br. (Dkt. No. 28) 10. It quotes the FDA as stating that "natural" means "that nothing artificial or synthetic . . . has been included in, or has been added to, a food that would not normally be expected to be in the food." Br. 8 (internal quotation marks omitted). Given the amount of attention that the FDA has apparently directed towards the issue before the Court, "there is no such risk of undercutting the FDA's judgment and authority by virtue of making independent determinations on issues upon which there are no FDA rules or regulations (or even informal policy statements).'" *Brazil*, 2013 WL 1209955, at *10 (citation and quotation marks omitted).

Determining whether a term is false or misleading is within the province of the courts. "[A]llegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading." *Jones*, 912 F. Supp. 2d at 898-99 (citations and internal quotation marks omitted). This case primarily requires asking whether a "reasonable consumer" would be misled by the challenged statements—what a "reasonable

consumer" thinks does not involve answering technical questions or scientific expertise. *See Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010) ("plaintiffs advance a relatively straightforward claim: they assert that defendant has violated FDA regulations and marketed a product that could mislead a reasonable consumer. As courts faced with state-law challenges in the food labeling arena have reasoned, this is a question courts are well-equipped to handle.") (citation and quotation marks omitted). Of course, the FDA's views are "relevant to the issue of whether these labels could be deceptive or misleading to a reasonable consumer," *Ivie*, 2013 WL 685372, at *12, but they are not the sole or dispositive factor. The questions to be decided here are squarely within "the conventional experience of judges." *Brown*, 277 F.3d at 1172.

The *General Dynamics* factors do not help General Mills. "Without question, the FDA has extensively regulated food labeling in the context of a labyrinthine regulatory scheme." *Chacanaca*, 752 F. Supp. 2d at 1124. Answering the questions of whether the food labeling in question is false or misleading, however, does not require the FDA's expertise and "uniformity in administration" by the FDA does not weigh in favor of abstaining. *Davel Commc'ns*, 460 F.3d at 1086. As one judge concluded, "the FDA has signaled a relative lack of interest in devoting its limited resources to what it evidently considers a minor issue, or in establishing some 'uniformity in administration' with regard to the use of 'natural' in food labels." *Janney*, 2013 WL 1962360, at *7; *see also Jones*, 912 F. Supp. 2d at 898 ("The FDA's inaction with respect to the term 'natural' implies that the FDA does not believe that the term 'natural' requires 'uniformity in administration.'").

The Ninth Circuit has made clear that not "all claims within an agency's purview [must] be decided by the agency." *Davel Commc'ns*, 460 F.3d at 1086. Bohac's "claims do not necessarily implicate primary jurisdiction, and the FDA has shown virtually no interest in regulating" the term "natural." *Cf. Chavez v. Nestle USA, Inc.*, 511 Fed. App'x 606, 607 (9th Cir. 2013) (discussing primary jurisdiction doctrine as applied to DHA). After considering these factors, and because this case is neither an issue of first impression for the FDA nor a particularly complicated issue inappropriate for a court to address, the Court declines to invoke the primary jurisdiction doctrine

6

as many other courts addressing the same or similar issues have declined to do.[2]

General Mills argues that deciding this issue "without the FDA's input, would risk usurping the FDA's interpretive authority and undermining, through private litigation, the FDA's considered judgments." Br. 4 (quoting *Cox v. Gruma Corp.*, No. 12-cv-6502, 2013 WL 3828800 (N.D. Cal. July 11, 2013) (internal quotation marks and brackets omitted). However, as General Mills itself admits, "the FDA has adopted a policy for use [of] the word 'natural' on food labels, one that it enforces through administrative action." Br. 10. As discussed above, the issues presented are not ones of first impression for the FDA—the Court is not wading into uncharted waters. Deciding this case does not mean that the Court shows no deference to the agency; on the contrary, the views expressed by the agency thus far, even if informal, would likely be highly relevant to the Court's determinations. Thus, the Court would not "risk usurping the FDA's interpretive authority and undermining, though private litigation, the FDA's considered judgments" by hearing this case.

*Astiana v. Hain Celestial Group, Inc.*, 2012 WL 5873585 (N.D. Cal. Nov. 19, 2012)—a case about the use of the term "natural" in cosmetics—is distinguishable from the facts at hand. As one judge in this district explained, *Astiana* "is inapposite because, unlike cosmetics, the FDA has provided informal policy guidance stating the minimum standards for using the term "natural"

---

[2] The Court recognizes that the judge in *Cox* concluded differently. *Cox v. Gruma Corp.*, No. 12-cv-6502, 2013 WL 3828800 (N.D. Cal. July 11, 2013). However, for the reasons set out in this Order, and because the weight of authority in this district has declined to invoke the primary jurisdiction doctrine in cases similar to this one, the Court is persuaded that a stay is unwarranted. Most other federal courts that have addressed whether GMOs are "natural" have declined to stay or dismiss the case based on the primary jurisdiction doctrine. *See In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-md-2413, 2013 WL 4647512, at *6-7 (E.D.N.Y. Aug. 29, 2013) (stating in case concerning GMOs that "undertaking the decision-making in this case would not 'risk usurping the FDA's interpretive authority'" and "the FDA is unlikely to respond in a timely manner to any referral from this Court"); *In re ConAgra Foods, Inc.*, No. 11-05379-MMM, 2013 WL 4259467, at *4-5 (C.D. Cal. Aug. 12, 2013) (stating in case concerning GMOs that "the FDA recently declined to make an administrative determination in response to an analogous referral by another district court," "the FDA declined to decide the question; it stated that it had other priorities, and that such a determination would require 'two to three years to complete'"; and that a stay is unwarranted); *Krzykwa v. Campbell Soup Co.*, No. 12-cv-62058, 2013 WL 2319330 (S.D. Fla. May 28, 2013) (stating in case concerning GMOs that "the FDA has repeatedly declined to adopt formal rule-making that would define the word 'natural' [and t]he Court agrees" that dismissal under the primary jurisdiction doctrine is unwarranted); *but see Van Atta v. Gen. Mills, Inc.*, No. 12-cv-2815-MSK-MJW (D. Colo. July 18, 2013).

with respect to food products . . . ." *Kosta*, 2012 WL 5873585, at *9. Indeed, in declining to invoke the primary jurisdiction doctrine in another case related to this one, the judge in *Astiana* explained that "the issuance of the informal 'policy' [concerning the term 'natural' with regard to food], or its citation by the FDA when it chooses to do so, suggests that the FDA does have a position of sorts—unlike the situation in *Astiana*, where the FDA had issued no guidance whatsoever, even informal policy statements, regarding the use of the term 'natural' on cosmetics packaging." *Janney*, 2013 WL 1962360, at *7. Given the FDA's guidance on food labeling to date, there is little risk of improperly invading the FDA's primary jurisdiction by hearing this case.

## II. THE COURT DECLINES TO EXERCISE ITS DISCRETION TO STAY.

General Mills argues that the Court should exercise its inherent discretion to stay the case. A district court has broad discretion to stay proceedings pending before it "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The power to stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55. "Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 269 (9th Cir. 1962).

These factors do not weigh in favor of a stay. General Mills argues that a three-month stay is modest and will not harm any party, but for the same reason, any harm from proceeding (primarily, the cost of beginning discovery) is also relatively modest. More important is the Court's skepticism that the FDA will timely respond to the referral in *Cox* given the FDA's history of addressing this issue and the multiplicity of other issues that command its attention. Accordingly, the orderly course of justice will most likely be harmed by a stay: the likely outcome is that in three months, either General Mills will return to seek a further stay from the Court or three months of case development will have been delayed. Federal Rule of Civil Procedure 1 emphasizes the importance of the "just, speedy, and inexpensive determination of

every action and proceeding," but a stay in this case is more likely to delay justice, slow the resolution of the matter, and make this litigation more expensive in the long run than simply moving forward with it. No one knows how the FDA will respond, if it responds at all, and the initial discovery sought by the plaintiffs may be relevant even in the event of a response. Balancing the potential cost to General Mills of commencing discovery against the delay caused by a stay and the likelihood that the FDA will not definitively and timely resolve the question presented to it, the Court declines to exercise its discretion to stay this case.

## CONCLUSION

For the reasons above, General Mills's Motion to Stay is DENIED.

**IT IS SO ORDERED.**

Dated: October 10, 2013



WILLIAM H. ORRICK
United States District Judge